The Honorable _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| ANITA WHITE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>LADY A ENTERTAINMENT, LLC, CHARLES KELLEY, DAVID HAYWOOD, AND HILLARY SCOTT<br><br>　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR (1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1125(a)(1)(A); (2) COMMON LAW TRADEMARK INFRINGEMENT; AND (3) UNFAIR COMPETITION IN VIOLATION OF REV. CODE WASH. § 19.86.020.**<br><br>JURY DEMAND |

**COMPLAINT**
**CASE NO. __-cv-____**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

Plaintiff Anita White ("Ms. White" or "Plaintiff") files this Complaint against Defendants Lady A Entertainment, LLC, Charles Kelley, David Haywood, and Hillary Scott (collectively "Defendants" or "Lady Antebellum") for trademark infringement under federal and state law. Lady Antebellum's decision to replace the band name LADY ANTEBELLUM with LADY A was undertaken with willful disregard for Ms. White's rights in her LADY A trademark, which she has used for nearly thirty years.  Through this Complaint, Ms. White seeks to protect against consumer confusion and the erasure of her LADY A brand identity.  She alleges as follows.

## THE PARTIES

1. Plaintiff Anita White ("Lady A") is an individual who is a citizen and resident of Kent, Washington.

2. Defendant Charles Kelley ("Kelley") is an individual who is a citizen and resident of Nashville, Tennessee.

3. Defendant David Haywood ("Haywood") is an individual who is a citizen and resident of Nashville, Tennessee.

4. Defendant Hillary Scott ("Scott") is an individual who is a citizen and resident of Brentwood, Tennessee.

5. Defendant Lady A Entertainment, LLC ("LAE") is a limited liability company organized under the laws of the State of Tennessee with its principal place of business located at 2300 Charlotte Avenue, Suite 103, Nashville, Tennessee 37203.

## JURISDICTION

6. The Court has original jurisdiction under 28 U.S.C. § 1331, as this is a civil action arising under 15 U.S.C. § 1125(a).  The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 insofar as all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution.

7. Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Lady Antebellum because:  (i) Lady Antebellum conducts business

COMPLAINT
CASE NO. __-cv-____

2.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

within the State of Washington and this judicial district; (ii) Lady Antebellum has caused its music to be advertised, promoted, and sold under the LADY A trademark in the State of Washington and this judicial district; (iii) the causes of action asserted in this Complaint arise out of Lady Antebellum's contacts with the State of Washington and this judicial district; and (iv) Lady Antebellum has caused tortious injury to Ms. White in the State of Washington and this judicial district.

8.  Venue is proper in this district because Lady Antebellum regularly conducts business in this district, a substantial portion of the unlawful activities alleged herein occurred in this district, and Ms. White was harmed in this district as a result of the unlawful conduct described herein.

## FACTUAL BACKGROUND

### The Real Lady A

9.  For nearly thirty years, Plaintiff Anita White has performed and provided music under the stage name and trademark LADY A.

10. Ms. White began her career as a karaoke singer in Seattle, Washington in the late 80s. Shy about singing in those early days, Ms. White held herself out as "LADY A" rather than perform under her given name. Shortly thereafter, she began performing original music as LADY A, and it was not long before the LADY A name came to embody the goodwill associated with Ms. White's performances.

11. Over the course of her career, Ms. White has performed with dozens of bands, in thousands of performances—always as LADY A.

12. During the 90s, Ms. White performed as LADY A extensively throughout the State of Washington and the Pacific Northwest. Ms. White also traveled for gigs elsewhere in the United States, including in Utah and Florida.

13. In the 2000s, as Ms. White continued to build her profile and the LADY A brand, she performed under the LADY A mark across the South, including in Tennessee.

COMPLAINT
CASE NO. __-cv-____
3.
COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

14. For many years, Ms. White has regularly performed at music festivals throughout the United States, such as the Waterfront Blues Festival, the Winthrop Blues Festival, and the Chicago Blues Festival, among others.

15. To date, Ms. White has released six albums as LADY A—the first a limited release in 2006 titled "Can I Get My Breakfast?" which was put out by Lady A and the Baby Blues Funk Band.

16. In 2010, Ms. White released "Bluez in the Key of Me" under the LADY A mark. The album was nominated for a Blues Music Award, and helped to take her music abroad. In the years that followed, Ms. White performed in the Netherlands, Denmark, France, Sweden, Belgium, and Germany.

17. Ms. White's music has been available for download and streaming under the LADY A mark throughout the United States since at least as early as the release of "Bluez in the Key of Me."

18. Ms. White has accrued common law rights in the LADY A trademark in connection with music and entertainment services as a result of her long, continuous, and prominent use of the LADY A mark since at least the early 1990s. Ms. White's rights in the LADY A trademark are particularly strong in the State of Washington and the Pacific Northwest, where most of her performances have occurred; however, her rights also extend nationwide by virtue of Ms. White's numerous performances and music sales under the LADY A trademark throughout the United States. Ms. White's nationwide common law trademark rights date to at least as early as the early 2000s, when she first began performing extensively outside of the State of Washington.

### LADY ANTEBELLUM

19. On information and belief, Defendants Scott, Kelley, and Haywood formed the band Lady Antebellum in 2006.

20. Defendants have explained in interviews that the name "LADY ANTEBELLUM" had its origin in a 2006 Franklin, Tennessee photoshoot, during which Defendants posed in period

1  dress in front of a pre-Civil War plantation.  Drawing on inspiration from the shoot, Defendant Kelley suggested the name "Lady Antebellum."  According to one interview with Defendant Haywood, the band was drawn to the word "antebellum" because it felt "kind of country and nostalgic."

21. Since then, Defendants have performed under the trademark LADY ANTEBELLUM, and have come to be known by that name.

22. The word "antebellum" derives from the Latin phrase *ante bellum*, which translates to "before the war."  Today, the word is commonly used to refer to the period of U.S. history prior to the Civil War, and is particularly associated with the pre-Civil War South.

23. For example, on information and belief, in 2010, Outback Concerts commissioned the following poster to promote a Lady Antebellum show in Cary, North Carolina:



On information and belief, the imagery of the plantation and Union and Confederate soldiers was intended to evoke the word "antebellum" in the LADY ANTEBELLUM mark.

COMPLAINT
CASE NO. __-cv-____

5.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

24. Plaintiff is further informed and believes, and on that basis alleges, that the LADY ANTEBELLUM mark has long courted controversy due to the association of its mark with a glorification of the pre-Civil War South.

### LADY ANTEBELLUM CO-OPTS "LADY A"

25. On May 25, 2020 in Minneapolis, Minnesota, Mr. George Floyd, a 46-year old African American, was suffocated by a police officer while being restrained during his arrest. The traumatic footage of Mr. Floyd's death drew unprecedented attention to police violence against African Americans and systemic racism more broadly, and sparked an explosion of public outrage.

26. On information and belief, against this backdrop, the LADY ANTEBELLUM trademark became a public-relations liability that Defendants could no longer ignore.

27. On June 11, 2020, in a statement posted by Defendants to the band's Twitter account, Defendants represented that: "After much personal reflection, band discussion, prayer, and many honest conversations with some of our closest black friends and colleagues, we have decided to drop the word 'antebellum' from our name . . . ." Defendants asserted that they would thereafter perform under the trademark LADY A, a "nickname" they purport to have been given by fans.

28. Plaintiff is informed and believes, and on that basis alleges, that Defendants never performed as LADY A prior to June 11, 2020.

29. On information and belief, prior to June 2020, Defendants always performed as LADY ANTEBELLUM, and consistently displayed the LADY ANTEBELLUM trademark in marketing and promotional materials.

30. Ms. White learned of Lady Antebellum's name change on the same day as Defendants' announcement from a series of texts from friends, followed by a call from Ethan Millman at Rolling Stone magazine.

31. The effect of the name change on Ms. White's ability to distinguish her music in the marketplace was overwhelming. Internet and social media searches for "Lady A," which had

readily returned results for her music, were now dominated by references to Lady Antebellum. Ms. White's LADY A brand had been usurped and set on the path to erasure.

32. Concerned about the impact that Lady Antebellum's use of the LADY A mark had, and will continue to have, on her ability to perform as LADY A, Ms. White secured the assistance of pro bono counsel to help her defend the LADY A brand.

33. Ms. White did not have to seek out Defendants. Shortly after Defendants announced their name change, their management company contacted Ms. White to discuss the possibility of coexistence. Lady Antebellum proposed that the parties participate in a videoconference on June 15, 2020 to discuss Ms. White's concerns, and Ms. White agreed.

34. During the meeting, the parties considered ways of addressing Ms. White's concerns. The parties were unable to reach a resolution, but that did not stop Defendants from promptly sending Ms. White a draft agreement.

35. In response to Defendants' draft agreement, Ms. White, through pro bono counsel, sought to negotiate an amicable resolution with Defendants. The parties had discussed the possibility of Lady Antebellum promoting Ms. White's work, or even collaborating on a song, in exchange for coexistence. Ms. White never committed to such an arrangement.

36. In the days that followed, Ms. White came to believe that the agreement being negotiated by her original pro bono counsel was not in her best interests. Specifically, the agreement would have allowed Lady Antebellum to continue using the LADY A while providing no compensation to Ms. White—only the promise that Lady Antebellum would make best efforts to assist her career and up to $10,000 reimbursement for legal fees associated with negotiating a resolution of the parties' dispute (notwithstanding the fact that Ms. White was represented pro bono) and trademark filings for Ms. White's LADY A mark.

37. Ms. White retained new pro bono counsel at Cooley LLP, whom promptly attempted to resume negotiations with Lady Antebellum with the aim of protecting the LADY A

COMPLAINT
CASE NO. __-cv-____

7.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

1  brand established by Ms. White.  To that end, Ms. White's new pro bono counsel shared a draft
2  settlement agreement with Lady Antebellum on July 6, 2020.

3  38. Instead of responding to the offer, and without warning, Defendants filed a
4  declaratory judgment action against Ms. White in the Middle District of Tennessee on July 8, 2020
5  (the "DJ Complaint").

6  39. In the DJ Complaint, Lady Antebellum alleges that they have used LADY A as a
7  trademark for music related offerings since as early as 2008.  Lady Antebellum further alleges that
8  Defendant LAE is the owner of U.S. Registration Nos. 4,004,006, 4,030,752, and 4,292,685 for
9  LADY A.  According to Lady Antebellum, the parties' LADY A marks can coexist,
10 notwithstanding the fact that they are identical, are used in connection with the same goods and
11 services, and are rendered through the same channels of trade.

12 40. To the contrary, on information and belief, prior to June 2020, Defendants did not
13 perform as LADY A and did not make use of the fan-originated "LADY A" nickname as a
14 trademark.

15 41. On information and belief, even if Defendants had used LADY A as a trademark,
16 Ms. White possesses superior common law trademark rights, which precede the existence of
17 Defendants' band, let alone their alleged LADY A mark.  To the extent that any prior coexistence
18 occurred, it was only because Defendants' use was limited, lacked prominence, and would have
19 been overshadowed by the well-known LADY ANTEBELLUM mark.

## FIRST CLAIM FOR RELIEF

**(Trademark Infringement Under Lanham Act, 15 U.S.C. § 1125(a)(1)(A))**

42. Ms. White realleges and incorporates by reference paragraphs 1 through 41, inclusive, as if fully set forth here.

43. Ms. White owns strong, nationwide common law rights in the trademark LADY A in connection with music and entertainment services in the nature of musical performances.

44. Ms. White's common law trademark rights in the LADY A mark predate any rights in the LADY A mark allegedly owned by Lady Antebellum.

45. The LADY A trademark used by Lady Antebellum is identical to Ms. White's LADY A trademark.

46. Both Lady Antebellum and Ms. White perform concerts and sell music under the LADY A trademark.

47. Both Lady Antebellum and Ms. White offer their products and services through the same channel of trade, namely via popular social media platforms, at concert venues, and at music festivals throughout the United States.

48. Those seeking Ms. White's music in online market places and on social media are now diverted to content from Lady Antebellum under an identical mark, thereby causing initial interest confusion.

49. At the same time, Lady Antebellum's popularity and resources have enabled them to saturate the market with their LADY A mark and overwhelm the brand identity that Ms. White has developed during decades of use. Under these circumstances reverse confusion is inevitable. Lady Antebellum's use of the LADY A mark has injured and will continue to injure Ms. White by causing the public to be confused or mistaken into believing that Ms. White's music originates from, is sponsored by, endorsed by, or is otherwise associated with Defendants, resulting in the usurpation of Ms. White's brand identity under the LADY A mark.

50. Lady Antebellum's use of the LADY A mark is likely to deceive the public regarding the source, sponsorship, and/or affiliation of Lady Antebellum with Ms. White and vice versa. As such, Lady Antebellum is liable to Ms. White for infringement under 15 U.S.C. §1125(a)(1)(A).

51. As demonstrated by Lady Antebellum's refusal to cease use of the LADY A trademark, Lady Antebellum's acts as alleged above, if not enjoined, will continue. Ms. White has no adequate remedy at law.

**COMPLAINT**
**CASE NO. __-cv-____**

9.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

52. Because of Lady Antebellum's infringement of the LADY A trademark, Ms. White has incurred damages in an amount to be proven at trial consisting of, among other things, lost sales, diminished brand identity, and diminution in the value of and goodwill associated with the mark.

### SECOND CLAIM FOR RELIEF

### (COMMON LAW TRADEMARK INFRINGEMENT)

53. Ms. White realleges and incorporates by reference paragraphs 1 through 52, inclusive, as if fully set forth here.

54. Lady Antebellum's acts alleged herein infringe Ms. White's nationwide common law trademark rights in the LADY A mark, which predate any rights that Lady Antebellum allegedly possesses.

55. Lady Antebellum's knowing and willful use of the identical trademark LADY A is likely to lead to both initial interest confusion and reverse confusion among the parties' audiences, both within the State of Washington and throughout the United States.  Defendant's conduct thus constitutes common law trademark infringement under Washington law.

56. Defendants' conduct has caused and will continue to cause injury to Ms. White in the form of lost sales, diminished brand identity, and diminution and loss of goodwill in the LADY A trademark.

57. Defendants' acts as alleged above, if not enjoined, will continue.  Ms. White has no adequate remedy at law.

58. In view of the foregoing, Ms. White is entitled to an injunction against Defendants, compensation for actual damages, as well as all other remedies available under Washington State law.

### THIRD CLAIM FOR RELIEF

### (UNFAIR COMPETITION IN VIOLATION OF REV. CODE WASH. § 19.86.020)

59. Ms. White realleges and incorporates by reference paragraphs 1 through 58,

COMPLAINT
CASE NO. __-cv-____

10.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

inclusive, as if fully set forth here.

60. Defendant's acts alleged herein infringe Ms. White's exclusive trademark rights in the LADY A mark.

61. Defendants' knowing and willful use of the identical trademark LADY A is likely to lead to both initial interest confusion and reverse confusion among the parties' fans, both within the State of Washington and throughout the United States. Defendant's conduct thus constitutes unfair competition under Rev. Code Wash § 19.86.020.

62. Defendants' conduct has caused and will continue to cause injury to Ms. White in the form of lost sales, diminished brand identity, and diminution and loss of goodwill in the LADY A trademark.

63. Defendants' acts as alleged above, if not enjoined, will continue. Ms. White has no adequate remedy at law.

64. In view of the foregoing, Ms. White is entitled to an injunction against Defendants, compensation for actual damages, as well as all other remedies available under Rev. Code Wash § 19.86.020

\* \* \*

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

**a)** For judgment in favor of Plaintiff on each of her claims for relief;

**b)** For injunctive relief; specifically, that Defendants and all of their officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and successors in interest, and all other persons acting in concert with it be preliminarily and permanently enjoined from using the LADY A trademark;

**c)** For compensatory damages;

**d)** For disgorgement of profits attributable to infringing use of the LADY A mark;

COMPLAINT
CASE NO. __-cv-____

11.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

| | | |
|---|---|---|
|1| e) | For a reasonable royalty fee for any sales of music or musical performances rendered under the LADY A mark; |
|3| f) | For trebling of the disgorgement of profits and damages; |
|4| g) | For pre-judgment and post-judgment interest; |
|5| h) | For costs of this suit; and |
|6| i) | For such other relief as the court deems just and proper. |

Dated:  September 15, 2020                     Respectfully submitted,

 /s/ Christopher B. Durbin
Christopher B. Durbin (WSBA #41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA  98101-1355
Tel.: (206) 452-8700
Fax: (206) 452-8800
Email: cdurbin@cooley.com

Brendan J. Hughes (*pro hac vice* to be filed)
Jane Van Benten (*pro hac vice* to be filed)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, D.C.  20004-2446
Tel.: (202) 842-7800
Fax: (202) 842-7899
Email: bhughes@cooley.com
Email: jvanbenten@cooley.com

Joseph M. Drayton (*pro hac vice* to be filed)
COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036
Tel.: (212) 479-6000
Fax: (212) 479-6275
Email: jdrayton@cooley.com

Judd D. Lauter (*pro hac vice* to be filed)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

| | |
|---|---|
| 1 | Tel.: (650) 843-5960 |
| 2 | Fax: (650) 843-7400 |
|   | Email: jlauter@cooley.com |
| 3 | |
| 4 | Counsel for Plaintiff ANITA WHITE |

**COMPLAINT**
**CASE NO. __-cv-____**

13.